IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

E.P., BY AND THROUGH HIS
PARENTS, J.P. AND A.P.

*Plaintiffs*,

v.                                                    Civil Action No. ELH-15-3725

HOWARD COUNTY PUBLIC SCHOOL
SYSTEM, *et al.*,

*Defendants*.

## MEMORANDUM

E.P., a male teenager with learning disabilities, by and through his parents, J.P. and A.P.,

plaintiffs, filed suit against the following defendants:  the Howard County Public School System

("HCPSS"); the Board of Education of Howard County; and Dr. Renee A. Foose, in her official

capacity as Superintendent of HCPSS (collectively, the "School Board").   ECF 2, Complaint,

¶ 1.[1]  Plaintiffs allege violations of the Individuals with Disabilities Education Act ("IDEA"), 20

U.S.C. § 1400 *et seq.*; IDEA implementing regulations, 34 C.F.R. § 300.1 *et seq.*; the Education

Article of the Maryland Code;[2] and Title 13A of the Code of Maryland Regulations,

13A.05.01.01, *et seq.   Id.* ¶¶ 1, 20-21.   Plaintiffs' suit is rooted in their request for an

Independent Educational Evaluation ("IEE") at the expense of the School Board,  consisting of a

neuropsychological evaluation and Functional Behavior Assessment.   In particular, plaintiffs

---

[1] The Complaint (ECF 2) has been redacted to protect the names of the plaintiffs. An unredacted version of the Complaint is docketed at ECF 1. Because the identities of the plaintiffs are not pertinent to the issues, I will refer to ECF 2.

[2] Plaintiffs have not specified the sections of the Education Article under which they have sued.   ECF 2, ¶ 1. Maryland Code (2014 Repl. Vol., 2015 Supp.), §§8-401 *et seq.* of the Education Article is the Maryland corollary to IDEA.

seek to reverse the Decision and Order of an Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings ("OAH"), in which the ALJ determined that E.P. is not entitled to the IEE.

Pursuant to 20 U.S.C. § 1415(i)(C)(ii),[3] plaintiffs have filed a motion (ECF 15) to supplement the administrative record, supported by a memorandum of law (ECF 15-1) (collectively, the "Motion").  They seek to add the report of Lisi Levisohn, Ph.D, who conducted an independent neuropsychological-educational evaluation, at plaintiffs' request, after the administrative hearing.  A redacted version of Dr. Levisohn's report is appended to the Motion. ECF 15-3 (the "Report").[4]  According to plaintiffs, "a comparison" of the Report to the evaluation of E.P. that was conducted by the School Board in 2014 "demonstrates the insufficiencies and inappropriateness of HCPSS's evaluation of E.P."  ECF 15-1 at 2.  Moreover, plaintiffs claim that the Report should be added to the record because it was issued "only recently, well *after* the underlying administrative hearing in this matter concluded. . . ."  *Id.*

Defendants oppose the Motion (ECF 19, "Opposition") and have included two exhibits. ECF 19-1; ECF 19-2.  Plaintiffs have replied (ECF 20, "Reply") and submitted an additional exhibit.  ECF 20-1.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

---

[3]  Plaintiffs cite 20 U.S.C. § 1415(e)(2)(B)(ii) to support their Motion. *See* ECF 15-1 at 6-7.  However, the applicable provision is now found in 20 U.S.C. § 1415(i)(C)(ii).

[4] Summaries of test assessments performed by Dr. Levisohn are appended to the Report. The score summary pages are part of larger scoring reports that have been provided to HCPSS, along with Dr. Levisohn's Report.  But, the larger scoring reports were not attached as an exhibit. ECF 15-1 at 1.

## I.    Factual and Procedural Background[5]

E.P. was born in January 2002.  ECF 2 ¶ 7.  At the relevant time, he was enrolled as a student in HCPSS.  ECF 2, ¶ 2.  Previously, E.P. attended a school in Prince George County, where he was classified as a gifted student.  *Id.*; ECF 16, ALJ Decision, ¶ 2. [6]  In the sixth grade at HCPSS, however, E.P. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and received an Accommodations Plan, pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  ECF 2, ¶¶ 2, 13.[7]  E.P. was required to repeat the sixth grade due to his poor performance.  In E.P.'s second sixth grade year, his parents asked HCPSS to evaluate him for eligibility for Special Education services under IDEA.  ECF 2, ¶ 3; *see also* ECF 16, ALJ Decision, ¶ 8.

HCPSS evaluated E.P. in November 2014.  ECF 2, ¶ 15.  HCPSS obtained two reports– an Educational Assessment Report dated November 14, 2014, authored by Margaret Bosse, Special Education Teacher and Team Leader, and a Report of Psychological Assessment dated November 25, 2014, authored by Alyson Celauro, Ed.S., a Nationally Certified School Psychologist (collectively, "HCPSS Evaluation").  ECF 2, ¶ 15; *see also* ECF 16, Educational Assessment Report; ECF 16, Report of Psychological Assessment.

The Educational Assessment Report, which is five pages in length, summarizes E.P.'s performance on Woodcock Johnson III achievement tests.  ECF 16, Educational Assessment

---

[5] The factual background is derived from the Complaint and the administrative record. For the purposes of this Memorandum Opinion, it is unnecessary to review fully the allegations and procedural history.

[6] ECF 16, which contains the entire administrative record, was filed in paper format only. Accordingly, when referring to specific documents within the administrative record, I refer to the document by its name.  Page numbers will refer to the pages of the specific document.

[7] The ALJ stated that E.P. already had a Section 504 Plan when he came to HCPSS.  ECF 16, ALJ Decision, ¶ 2.

Report, at 1.   In the nine-page Report of Psychological Assessment, Celauro concluded that E.P.'s overall cognitive ability, as measured by the Wechsler Intelligence Scale for Children (4th Edition) falls in the superior range of functioning as compared to his peers.   ECF 16, Report of Psychological Assessment, at 7.   But, Celauro determined that E.P. has a deficit in the area of processing skills and behavior ratings consistent with his diagnosis of ADHD.   *Id.*

The HCPSS Evaluation contained no recommendation or finding regarding E.P.'s eligibility under IDEA.   ECF 2, ¶ 16; *see also* ECF 16, Educational Assessment Report; ECF 16, Report of Psychological Assessment.   On December 2, 2014, on the basis of these reports, E.P.'s Individualized Education Program ("IEP") team determined that E.P. was not eligible under IDEA to receive special education services.   ECF 2, ¶ 16; ECF 16, ALJ Decision, ¶ 89; ECF 16, Evaluation Report Specific Learning Disability Supplement, at 2-3; ECF 16, IEP Team Meeting Report, at 2.   However, the IEP team recommended that E.P. should receive "checking for understanding, extra time to process directions, and chunk assignments/rubric to support his organization."   ECF 16, IEP Team Meeting Report, at 2.   In addition, the team recommended that E.P. and his family "should advocate for extra time as needed."   *Id.*

E.P.'s parents regarded the HCPSS Evaluation as "inadequate and inappropriate . . . ." ECF 2, ¶ 16.   In particular, they claimed that it failed to evaluate E.P. "in all areas of suspected disability."   *Id.* ¶ 16.   And, they disagreed with the determination of non-eligibility for services under IDEA.   *Id*. ¶ 17.   By letter dated March 31, 2015, E.P.'s parents, through counsel, requested an IEE, including neuropsychological testing and a Functional Behavior Assessment. *Id.*   HCPSS denied the request and, on May 4, 2015, filed a due process complaint to defend its evaluation, pursuant to 34 C.F.R. § 300.502(b)(2)(i)-(ii).   *Id.*

HCPSS's due process complaint was considered by an ALJ at hearings held on June 6, June 26, and July 7, 2015. *Id.* ¶¶ 4, 18.   On August 6, 2015, the ALJ found that HCPSS's 2014 evaluation of E.P. was appropriate (*id.*, ¶ 5; ECF 16, ALJ Decision, at 56) and, accordingly, that E.P. was not entitled to an IEE at public expense, in accordance with 20 U.S.C. §1415(b)(1). ECF 2, ¶ 19; ECF 16, ALJ Decision, at 56.

On December 4, 2015, plaintiffs filed suit in this Court, pursuant to 20 U.S.C. § 1415(i), seeking reversal of the ALJ's decision.  *See* ECF 1.[8]  Plaintiffs argue, *inter alia, id.* ¶ 5:

> The ALJ's finding that HCPSS's evaluation of E.P. was appropriate is legally baseless and factually incorrect. The evaluation failed to comprehensively evaluate E.P. in all areas of suspected disability and improperly evaluated E.P. for a suspected Specific Learning Disability using an inappropriate methodology. Moreover, the HCPSS evaluation did not, as specifically required by IDEA, make any determination whether E.P. was a child with a disability and eligible under IDEA to receive Special Education.

Plaintiffs also ask the Court to order HCPSS to fund an IEE for E.P. *Id.* at 29.  As noted, after the ALJ issued his ruling, plaintiffs obtained Dr. Levisohn's IEE.  Because of plaintiffs' financial circumstances, plaintiffs' counsel advanced the cost of the IEE.  ECF 15-1 at 9 n. 4.  In the Motion, plaintiffs clarify that they seek reimbursement for the cost of Dr. Levisohn's IEE. *Id.*

Plaintiffs have moved to supplement the administrative record to add the Report of Dr. Levisohn, who conducted an independent neuropsychological-educational evaluation of E.P. in October and November 2015, and issued her Report in March 2016, subsequent to the administrative hearing.  ECF 15; ECF 15-1; ECF 15-3.  In her 25-page Report, Dr. Levisohn concluded that E.P. qualifies for an IEP, under the eligibility category of specific learning disability.  ECF 15-3 at 21.

---

[8] Plaintiffs assert that this Court has jurisdiction over this "appeal . . . ."  ECF 2 ¶ 9.

## II.    Statutory Framework

"Congress enacted IDEA in 1970[] to ensure that all children with disabilities are provided 'a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected.'"  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009) (citation omitted) (alterations in *Forest Grove*);[9] *see also Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 527 (4th Cir.) ("[T]he touchstone of IDEA is the actual provision of a free appropriate public education."), *cert. denied,* 525 U.S. 871 (1998).  To this end, IDEA mandates that "all states receiving federal funds for education must provide disabled schoolchildren with a 'free appropriate public education,'" commonly referred to as a "FAPE." *J.P. ex rel. Peterson v. Cnty. Sch. Bd.*, 516 F.3d 254, 257 (4th Cir. 2008) (citation omitted).

In 20 U.S.C. § 1401(9), "free appropriate public education" is defined as follows:

[S]pecial education and related services that—

> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education program....

However, "[t]o be considered a member of the IDEA's protected class, the individual must be classified as having a recognized disability."  *Carter by Ward v. Prince George's Cnty. Pub. Sch.*, 23 F. Supp. 2d 585, 589 (D. Md. 1998); *see also* 20 U.S.C. § 1401(3) (listing the

---

[9] The IDEA "was enacted as the Education of the Handicapped Act, and was renamed the Individuals with Disabilities Education Act in 1990." *Forest Grove Sch. Dist.*, 557 U.S. at 239 n. 6.

covered disabilities under IDEA).   If a child qualifies, "[a] school provides a FAPE by developing an IEP for each disabled child." *J.P.*, 516 F.3d at 257.  The IEP consists of "a written statement for each child with a disability," 20 U.S.C. § 1414(d)(1)(A)(i), which "'must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress.'" *J.P.*, 516 F.3d at 257 (citation omitted).    An IEP should be "'reasonably calculated to enable the child to receive educational benefits.'"  *Id.* (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)).

"Parents and guardians play a significant role in the IEP process." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005).   Accordingly, IDEA "provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education."  *Sellers*, 141 F.3d at 527.  Through these procedures, IDEA "'guarantee[s] parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" *AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 678 (4th Cir. 2004) (brackets in original) (quoting *Honig v. Doe*, 484 U.S. 305, 311–12 (1988)).

Of import here, under certain circumstances the Act requires that a parent is permitted "to obtain an independent educational evaluation of the child," at public expense.  *Rowley*, 458 U.S. 176, 183 n. 6 (1982) (citation omitted); *see also* 20 U.S.C. §1415(b)(1).  The implementing regulation, codified at 34 C.F.R. §300.502(b), provides, in relevant part:

(b) Parent right to evaluation at public expense.

(1) A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency, subject to the conditions in paragraphs (b)(2) through (4) of this section.

(2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either—

(i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or

(ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§ 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria.

(3) If the public agency files a due process complaint notice to request a hearing and the final decision is that the agency's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

When a due process complaint is filed pursuant to this regulation, "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(a). Therefore, Md. Code (2014 Repl. Vol., 2015 Supp.), §§ 8–413(d), (e), and (j) of the Education Article ("Ed.") are pertinent. These sections establish that, upon the filing of a "due process complaint," an administrative law judge, serving as the "impartial hearing officer" required by the IDEA, shall conduct a hearing, the result of which can be appealed within 120 days to federal court or to the circuit court for the county in which the child resides. Ed. §§ 8–413(a), (d), (e), and (j). And, 20 U.S.C. § 1415(i)(2)(A) is also pertinent:

Any party aggrieved by the findings and decision made under subsection (f) ... who does not have the right to an appeal under subsection (g) ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

8

### III.   Discussion

### A.

Under 20 U.S.C. § 1415(i)(2)(A), plaintiffs seeks reversal of the ALJ's decision.   To support their contention, they have moved to supplement the administrative record pursuant to 20 U.S.C. § 1415(i)(C) (ii) (formerly § 1415(e)(2)), by adding the Report they requested after the administrative hearing.

IDEA provides that in any civil action in which review of an administrative hearing is sought, the court "shall hear additional evidence at the request of a party."   20 U.S.C. §1415(i)(C) (ii); *see also Honig*, 484 U.S. at 312 (citation omitted) ("In addition to reviewing the administrative record, courts are empowered to take additional evidence at the request of either party…").   Whether to allow additional evidence under § 1415(i)(C) "'must be left to the discretion of the trial court . . . .'"   *Avjian v. Weast*, 242 F. App'x 77, 81 (4th Cir. 2007) (per curiam) (citing *Town of Burlington*, 736 F.2d at 791); *see also Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 476 (4th Cir. 2009) ("Our decision in *Springer*, consistent with the law in other circuits, recognized that district courts have the discretion to tailor their proceedings and to limit the introduction of 'additional evidence' under the IDEA.").

Of course, there are any number of reasons why a party might seek supplementation of the record.   To illustrate, "'there might [be] gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing.'"   *Justin G. ex rel. Gene R. v. Bd. of Educ.*, 148 F. Supp. 2d 576, 585 (D. Md. 2001) (quoting *Town of Burlington v. Dep't of Education*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985)).   Notably, "'[t]he starting

9

point for determining what additional evidence should be received, however, is the record of the administrative proceeding.'" *Id.*

"The Fourth Circuit has adopted the strict approach to the concept of additional evidence that was outlined in *Town of Burlington v. Dep't of Educ. for Commonwealth of Mass.*, 736 F.2d 773, 790 (1st Cir. 1984)." *Taylor ex rel. Dolch v. Sandusky*, CCB-04-301, 2005 WL 524586, at *4 (D. Md. Mar. 4, 2005) (citing *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 666–67 (4th Cir.1998)). Other circuits have adopted this approach as well. *See, e.g., Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir.1996); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472–73 (9th Cir.1993), *cert. denied*, 513 U.S. 825 (1994).

Under this approach, the word "'additional'" is construed "'in the ordinary sense of the word ... to mean supplemental.  Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of additional.'" *Springer*, 134 F.3d at 667 (internal quotation marks omitted) (citing *Town of Burlington*, 736 F.2d at 790).  Moreover, "the exclusion of 'testimony from all who did, or could have, testified before the administrative hearing' would be 'an appropriate limit in many cases.'" *Springer*, 134 F.3d at 667 (quoting *Town of Burlington*, 736 F.2d at 790); *see Jaynes ex rel. Jaynes v. Newport News Sch. Bd.*, 13 F. App'x 166, 174 (4th Cir. 2001) (per curiam) (relying on *Springer*, 134 F.3d at 666–67, and stating: "Although IDEA permits the district court to hear new evidence, we have held that such evidence is limited to that which could not have been presented before the administrative agencies.").

The "authority" to limit the introduction of additional evidence is "necessary…to protect the role of the administrative hearing as the primary forum in which to resolve disputes regarding IEPs." *Schaffer*, 554 F.3d at 476.  Therefore, the trial court "'must be careful not to allow such

evidence to change the character of the hearing from one of review to a trial de novo.'" *Avjian*, 242 F. App'x at 81 (citing *Town of Burlington*, 736 F.2d at 791).   As the Fourth Circuit has explained, "[a] lax interpretation of 'additional evidence' would 'reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial de novo.'" *Springer*, 134 F.3d at 667 (quoting *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 997 (1st Cir.1990), *cert. denied*, 499 U.S. 912 (1991)).

Furthermore, "state administrative hearings under the IDEA are entitled to 'due weight.'" *Schaffer*, 554 F.3d at 476 (quoting *Rowley*, 458 U.S. at 206).   "But if parties could always introduce additional evidence in the district court…administrative proceedings would no longer receive the weight that they are due."   *Schaffer*, 554 F.3d at 476.   The Fourth Circuit observed in *Springer*, 134 F.3d at 667 (citations omitted):

> A lenient standard for additional evidence would have the consequence of making the whole IDEA process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case. Whether this lengthy process would serve students is doubtful at best. The IDEA was designed to facilitate the inclusion of disabled children into the public education system. "Children are not static beings; neither their academic progress nor their disabilities wait for the resolution of legal conflicts."

### B.

At the due process hearing, plaintiffs sought public funding for the IEE, so as to obtain "'a complete picture of the child's needs.'"   ECF 15-1 at 7 (citation omitted).   Unsuccessful at the administrative hearing, plaintiffs then obtained the IEE on their own, after the administrative hearing, and now seek to add the Report to the record, as part of their proof that the ALJ erred in not ordering the IEE at public expense.

Plaintiffs raise several arguments in support of their Motion.   They assert that the Report "is, in its very nature, supplemental."   ECF 15-1 at 8.   They explain that the Report does not

constitute "'the type of evidence traditionally excluded by courts" because the Report "was not available to the parents at the time of the administrative hearing nor can the evidence be characterized as repetitive or embellished witness testimony.'"   ECF 15-1 (quoting *King v. Board of Education of Allegany County, Md.,* 999 F. Supp. 750, 775 (D. Md. 1998)).  According to plaintiffs, the Report could not have been introduced at the underlying hearing, as it did not exist; it was only obtained after the administrative hearing.  *Id.* at 2, 7.  Further, plaintiffs argue: "[W]here the precise issue presented at the administrative hearing was whether HCPSS was required to *pay for* the Family's evaluation, the Family can hardly be faulted for failing to obtain the evaluation and pay for it out of pocket *prior to* the conclusion of that hearing."  *Id.* at 9.

In addition, plaintiffs contend that the Report is relevant to the underlying issue of whether the HCPSS evaluation of E.P. in 2014 was inappropriate.  *Id.* at 2, 9-10.  As noted, they posit that "a comparison of HCPSS's 2014 evaluation with Dr. Levisohn's much more comprehensive evaluation clearly demonstrates the insufficiencies and inappropriateness of HCPSS's evaluation of E.P."  *Id.* at 2.

Defendants counter that plaintiffs have only "themselves to blame" for the fact that Dr. Levisohn's evaluation was not conducted until after the administrative hearing.   ECF 19 at 9. They observe that plaintiffs "have offered no reason as to why Dr. Levisohn's evaluation could not have been commissioned prior to the administrative hearing and introduced at the hearing," *id.*  Defendants also suggest that "the timing of the report demonstrated that it was clearly commissioned for the purpose of this litigation."  *Id.* at 4 n. 6.  They posit, *id.* at 7:

> The Parents have never suggested that Dr. Levisohn could not have been available during the course of the three day hearing before the ALJ that took place during June and July, 2015.  The Parents' [sic] provide no explanation as to why their attorneys could not have paid to commission Dr. Levisohn's evaluation in preparation for the administrative hearing.  There is no reason that they could not have asked the ALJ, as they now ask this Court, to use Dr. Levisohn's report as a

basis of comparison against Ms. Bosse's and Ms. Celauro's reports. The issue before the ALJ was whether the School Board would be *required to pay* for an IEE. They could simply have presented Dr. Levisohn's bill to the ALJ, along with her report, and he would certainly have had subject matter jurisdiction to order the School Board to pay for it, under 34 C.F.R. §300.502(b), in the event that he found the Bosse and Celauro reports to be deficient under the IDEA. (emphasis in original).

Defendants continue, *id.* at 9:

It appears that, similar to the parents in *Springer ex rel. Springer*, these Parents "made the tactical decision to reserve the expense – and the impact. . ." of Dr. Levisohn's evaluation. 134 F.3d at 667. As in *Springer*, there is no reason for the Court "to allow these litigants to escape the consequences of a litigation strategy gone awry. . . ." *Id.*

In addition, defendants contest the relevance of the IEE. They assert: "There is no need for this Court to consult the evaluation of Dr. Levisohn in order to assess the appropriateness of the Bosse and Celauro evaluations." *Id.* at 9. Defendants conclude that the question of whether the HCPSS evaluation report met the appropriateness requirements of the IDEA "can be resolved based upon the content found within the four corners of those evaluations and the record that was developed before the ALJ." *Id.* [10]

In Reply (ECF 20), plaintiffs reject the argument that they were "somehow legally required to finance and obtain Dr. Levisohn's report *prior* to the Due Process hearing in this matter, the very subject matter of which was whether HCPSS, itself, was required to provide the [plaintiffs] an IEE at public expense." ECF 20 at 1-2. They add: "[A]ccording to HCPSS, [the

---

[10] Defendants also attack the validity of Dr. Levisohn's Report. They attach the Affidavit of Alyson Celauro, Ed. S., dated April 29, 2016 (ECF 19-1), who attests that Dr. Levisohn's Report is deficient in a number of respects. *See* ECF 19 at 5; ECF 19-1 at 1. Defendants also attach the Affidavit of Susan Doughtery, M.A., C.A.A., dated April 29, 2016. ECF 19-2.

Plaintiffs reject the criticisms concerning Dr. Levisohn's Report. They have submitted the Declaration of Caitlin E. McAndrews, their attorney, who disputes Celauro's criticisms. ECF 20-1; *see also* ECF 20 at 4-5.

In resolving the Motion, I need not address the quality of the Report.

Family] was required to obtain the very relief sought in the Due Process hearing prior to that hearing even taking place. This is utterly nonsensical." *Id.*

Additionally, plaintiffs deny that Dr. Levisohn's Report was procured for litigation.   *Id.* at 3, 4.   Rather, they contend that the Report was obtained for educational purposes, and they claim that they "could not await the outcome of this court's- and possibly the Court of Appeals' - review of the ALJ's decision."   *Id.* at 2.   According to plaintiffs, "there is no requirement that parents await the outcome of a federal court proceeding on the issue of whether a school system is obligated to fund an IEE to obtain that IEE themselves, particularly when the IEE is important to their child's future education, and where, as in most educational matters, time is of the essence. " *Id.* at 4.

Plaintiffs maintain that the sole issue is whether the ALJ correctly found HCPSS's evaluation of E.P. to be appropriate.   In their view, Dr. Levisohn's Report "provides valuable information to the Court to decide that issue, and the Court may decide the weight to be afforded to Dr. Levisohn's report."   *Id.* at 7-8.   They add: "The instant motion concerns only the *admissibility* of Dr. Levisohn's report, not the weight to be given to it."   *Id.* at 10.

### C.

As noted, whether to allow additional evidence under § 1415(i)(C) "'must be left to the discretion of the trial court[.]'" *Avjian*, 242 F. App'x at 81 (citing *Town of Burlington*, 736 F.2d at 791).   And, as discussed, "the exclusion of 'testimony from all who did, *or could have*, testified before the administrative hearing' is 'an appropriate limit in many cases.'" *Springer*, 134 F.3d at 667 (quoting *Town of Burlington*, 736 F.2d at 790) (emphasis added).   Thus, evidence is more likely to qualify as additional evidence if it was unavailable at the time of the administrative hearing.

To illustrate, in *Justin G. ex rel. Gene R. v. Board of Education of Montgomery County*, *supra*, 148 F. Supp. 2d 576, Judge Williams determined that evidence of recent private school placement qualified as proper additional evidence within the meaning of 20 U.S.C. § 1415(e)(2), because it "could not have been introduced during the administrative hearing as the placement was subsequent to the ALJ's decision." *Id.* at 585; *see, e.g., M.S. v. Fairfax Cnty. School Bd.*, 2006 WL 2376202 at *5 (E.D. Va. Aug. 11, 2006) (admitting post-hearing evidence of student's progress); *Kirby ex rel. Kirby v. Cabell Cnty. Bd. of Educ.*, CIV.A.3:05 0322, 2005 WL 3411772, at *4 (S.D.W. Va. Dec. 13, 2005) (admitting testimony and post-hearing report by evaluator because the "evidence [  ] was developed subsequent to the due process hearing and as such was not available for consideration by the [hearing officer].[1]"); *Bd. of Educ. v. I.S. ex rel. Summers*, 325 F. Supp. 2d 565, 569 n. 1 (D. Md. 2004) (citation omitted) (explaining that the court "considered certain additional evidence not available at the time of the due process hearing."); *King*, 999 F. Supp. at 775 (permitting evidence "which could not have been introduced during the local and state administrative hearings").

The question here is whether Dr. Levisohn's Report "fall[s] within the category of being unavailable" at the time of the hearing. To be sure, it had not yet been prepared. But, that is because it had not been requested.

*Springer* provides guidance. In *Springer*, plaintiffs sought to introduce live testimony from a psychiatrist who had examined the student months before an initial IDEA eligibility meeting. *Springer*, 134 F.3d at 667. A letter written by the psychiatrist about the student was considered during the administrative process. *Id.* at 662. The psychiatrist's "evaluation of [the student]—and anything he might have added to the letter that is contained in the record—was available well before the administrative process began" and there was no evidence that the

psychiatrist was unable to testify during administrative process. *Id.* at 667. The Court determined that the district court properly found that the testimony of the psychiatrist did not "fall within the category of being unavailable" merely because the plaintiffs had cited "scheduling difficulties" as the justification for why the psychiatrist did not testify at the administrative hearing. *Id.*

Of relevance here, the Fourth Circuit recognized that the plaintiffs "made the tactical decision to reserve the expense—and the impact—of live testimony by [the expert] until trial in federal court." *Springer*, 134 F.3d at 667. The Court assumed that the decision was made in good faith. *Id.* Nevertheless, it said: "[W]ere we to allow these litigants to escape the consequences of a litigation strategy gone awry, we would invite future litigants to engage in strategic behavior that may not be so innocent." *Id.*

Plaintiffs rely, *inter alia*, on *Kirby*, CIV.A.3:05 0322, 2005 WL 3411772 (*see* ECF 15-1 at 8). In *Kirby*, plaintiffs sought to admit evidence in federal court, including testimony and post-hearing reports by evaluators, "developed subsequent to the due process hearing and [thus] not available for consideration" by the hearing officer. *Id.* at *4. However, the hearing officer directed the plaintiffs to obtain the evaluations that the plaintiffs sought to admit into evidence. *Id.* On this basis, the federal court stated:

> At the conclusion of the due process hearing, there was still no clear plan as to Robert's future. Instead, in her directives for implementation, the [hearing officer] ordered objective standardized testing to measure Robert's mastery of specific subject matter. The information gained from the testing was to be used to determine what kind of educational plan Robert needed. The plaintiffs' evidence of test results, evaluations, and assessments all stem from the directives for implementation set forth by the [hearing officer]. They did not withhold this evidence at the due process hearing for the purpose of bolstering their case upon appeal.

There was no indication in *Kirby* that the plaintiffs made a tactical decision not to obtain testing and evaluation until after the administrative hearing. Rather, the plaintiffs obtained the additional evaluations as directed by the hearing officer.

In justifying their decision to obtain the Report only after the ALJ ruled against them, plaintiffs insist that they were not "required to finance and obtain Dr. Levisohn's report prior to the Due Process hearing in this matter, the very subject matter of which was whether HCPSS, itself, was required to provide the [plaintiffs with] an IEE at public expense." ECF 20 at 1-2; s*ee also* ECF 15-1 at 9, n. 4. They rely, *inter alia*, on *K.H. ex rel. Helmantoler v. Mt. Diablo Unified Sch. Dist.*, C 04-05400 SI, 2005 WL 2671385 (N.D. Cal. Oct. 19, 2005), in which the court permitted the post-hearing testimony of an evaluator because the plaintiffs "failed to introduce the testimony of [the evaluator] solely because they could not afford to pay her to do so." *Id.* at *3. *K.H.* is distinguishable.

Unlike in this case, the plaintiffs  in *K.H.* "appeared at their [administrative] hearing pro se," and the federal court was of the view that the plaintiffs "were tactically disadvantaged due to the lack of representation by an attorney at the [administrative] hearing." *Id.* (citations omitted). Second, although the evaluator's testimony was not presented at the administrative hearing, the report itself was presented in evidence. *Id.* Thus, the proposed testimony was not altogether new evidence, and admission of the testimony did not transform the due process hearing into "'a mere dress rehearsal. . . .'" *Springer*, 134 F.3d at 667 (citation omitted). But, the court also found that the evaluator's "declaration and testimony [were] not cumulative to her original report." *K.H.*, C 04-05400 SI, 2005 WL 2671385, at *3.

In this case, plaintiffs were represented by counsel at the administrative hearing. At that hearing, held in June and July 2015, they sought a ruling from the ALJ that would order the

School Board to obtain the IEE, at the School Board's expense.  The ALJ ruled against plaintiffs in August 2016.  *Id.* ¶ 5; *see also* ECF 16, ALJ Decision, at 56.  It was only after plaintiffs were unsuccessful at the OAH that they asked Dr. Levisohn to evaluate E.P.  Dr. Levisohn conducted her evaluation of E.P. in October and November 2015, and she issued her Report in March 2016.

Plaintiffs made a tactical decision not to obtain the Report for use at the administrative hearing.  To be sure, plaintiffs' decision may have been influenced by financial concerns. Nevertheless, to the extent that the Report was unavailable to the ALJ, it was because of a strategic decision made by the plaintiffs.  That the decision was motivated by financial considerations is hardly uncommon, and does not alter its character as a strategic decision. [11]

Notably, this is not a case where a report had been requested before the administrative hearing, but the evaluator was unable to complete it by the time of the hearing, due to circumstances beyond plaintiffs' control, such as illness; the child's illness; personal problems or scheduling difficulties on the part of the evaluator; or the like.  Rather, the request for the Report was delayed purposefully and obtained when it became apparent that it would be helpful in this suit to support plaintiffs' challenge to the ALJ's ruling.

The proceedings in federal court are not meant to be a trial de novo.  *Id.*  Plaintiffs made a calculated decision not to retain their own expert until after they lost at the administrative level. It would render the proceedings before the OAH little more than "'a mere dress rehearsal'", *Springer*, 134 F.3d at 667 (citation omitted), if plaintiffs could delay in gathering their evidence in order to determine whether such evidence would prove useful.

---

[11] The Court has not been provided with information to support the claim that plaintiffs could not afford to obtain the Report in issue.  I note, however, that their lawyer advanced the costs for the Report *after* the OAH proceedings.

Of course, I am not unsympathetic to the significant expense in obtaining the evaluation of E.P.  Nevertheless, litigants big and small are often confronted with decisions based on costs.

**IV.    Conclusion**

For the foregoing reasons, the Motion (ECF 15) shall be denied.  An Order follows.


Date: October 25, 2016                              _____/s/_____
                                                             Ellen Lipton Hollander
                                                             United States District Judge